**In re the GUARDIANSHIP OF Esther L. NORMAN.**

**No. 07–99–0267–CV.**

Court of Appeals of Texas, Amarillo.

Feb. 15, 2001.

---

Mary Galligan, Tammy C. Manning, Galligan & Manning, N. Terry Adams, Beirne, Maynard & Parsons, Houston, for appellant.

J. Martin Green, Beaumont, L. Darlene Payne Smith, Crain, Caton & James, Houston, Patrick A. Green, Green & Green, Conroe, for appellee.

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

QUINN, Justice.

Edna Hazelwood (Hazelwood) appeals from an order dismissing her application for the appointment of a guardian over the person and estate of Esther L. Norman (Mrs. Norman). Through two points of error, Hazelwood effectively contends that the trial court erred in denying her a jury trial and summarily adjudicating and dismissing the proceeding with prejudice. We agree and reverse.[1]

---

1. Both parties requested oral argument, however, our review of the record and briefs indicates that oral argument would not aid the Court in determining the issues involved.

## Background

As disclosed by the record, Hazelwood filed an application, in April of 1998, for an appointment of a guardian over the person and estate of Mrs. Norman. A guardian was sought because Mrs. Norman, an elderly woman, was "totally incapacitated." Pat Green (Green) was subsequently appointed attorney *ad litem* "to represent the interests" of the proposed ward. After Green joined issue, Robert Norman (Robert), Mrs. Norman's son with whom Mrs. Norman lived, filed a plea in intervention which denied the allegations in Hazelwood's application and, in the alternative, requested that he be appointed Mrs. Norman's guardian. Disputing the *total* incapacity of his mother, Robert averred that she was partially incapacitated and that the nature of the "incapacity [was] moderate senile dementia."

In November of 1998, Green moved to dismiss the cause. He believed the dismissal was appropriate because, among other things, 1) Mrs. Norman was not incapacitated, 2) her best interests did not warrant a guardian, and 3) neither the ward nor her estate needed the protection of a guardianship. The affidavit of Green was appended to the dismissal motion as support for same. Therein, he presented himself not only as attorney *ad litem* but also as a fact and expert witness rendering opinions on the validity of a trust agreement in which Mrs. Norman had placed her assets. Hazelwood responded to the motion, requested a hearing on same, submitted a jury demand, and, according to the jury demand, tendered the appropriate jury fee.

Approximately three months later, a hearing was held on the dismissal motion.

---

Therefore, the cause is submitted on the record and briefs pursuant to Rule 39.8 of the Texas Rules of Appellate Procedure.

Hazelwood appeared through her attorney of record, as did Mrs. Norman through a personal attorney and Green. Thereafter, Green proceeded to address the merits of the pending application. His argument encompassed, among other things, reading from medical records purporting to substantiate Mrs. Norman's capacity. So too did he argue that 1) there existed a want of "clear and convincing evidence" to support the relief his adversary desired and 2) the historically contentious nature of the relationship between Mrs. Norman and her offspring alone warranted dismissal. That Green was litigating the factual elements and merits of the application via this hearing is obvious and readily exemplified by the following statement:

> [b]ased on the application that I have reviewed, the doctors' letters, it is far from clear and convincing evidence that the proposed ward is an incapacitated person. From everything I have reviewed, she is an 80 year old woman. She is an 80 year old person that is having 80 year old problems. In no instance has she been declared that she can't take care of herself, manage her own affairs....

Indeed, the trial court apparently viewed the proceeding similarly. After allowing Green to complete his initial presentation, the trial court chastised Hazelwood's counsel about the absence of her client. Counsel responded by saying that she "didn't understand [the court was] going to have an evidentiary hearing with witnesses ... [and that] it seems like we are having a bench trial." To that, the court said "[s]eems to me that's what we are having." Counsel then informed the court that a jury had been demanded, to

that the court said nothing but rather continued the proceeding. Later, the trial court noted that "contrary statements" concerning Mrs. Norman's capacity had been presented. This prompted Hazelwood's attorney to exclaim "[t]hat's why we need to go to a fact finder...." Before she could complete the comment, however, the trial court uttered: "[y]ou just did. I'm right here finding all the facts that need to be found."

The trial court granted the motion and dismissed Hazelwood's application with prejudice pursuant to section 692 of the Texas Probate Code, as disclosed in the trial court's ensuing conclusions of law and findings of fact.[2] Via those conclusions and findings, the court not only held that there existed insufficient evidence establishing incapacity but also declared that Mrs. Norman was "not an incapacitated person." Other findings included the determinations that 1) Mrs. Norman possessed the capacity to care for herself, 2) none of her rights required protection, 3) a guardianship would not be in her best interests, and 4) the applicants were disqualified to serve as guardians.

### Authority and Its Application

To be entitled to the appointment of a guardian, the applicant must prove by clear and convincing evidence that 1) the proposed ward is incapacitated, 2) the best interests of same warrant appointment of a guardian, and 3) the rights or property of the proposed ward would be protected by the appointment. TEX.PROB.CODE ANN. § 684(a)(1)-(3) (Vernon Supp.2001). Moreover, if the application is contested, then any party to the proceeding "is entitled, on request, to a jury trial." *Id.* at § 643.

---

**2.** Section 692 states that "[i]f it is found that an adult person possesses the capacity to care for himself or herself and to manage the individual's property as would a reasonably prudent person, the court shall dismiss the application for guardianship." TEX.PROB.CODE ANN. § 692 (Vernon Supp.2001).

■ Here, the record discloses that Hazelwood filed an application for the appointment of a guardian. That the proceeding was contested is exemplified by the answer filed by Green, as attorney *ad litem* for Mrs. Norman. Moreover, comparison of Green's motion to dismiss with the prerequisites for obtaining a guardian inescapably reveal that dismissal was sought because those prerequisites allegedly could not be satisfied. Similarly obvious from the record is that Hazelwood requested a jury trial months before the court convened a hearing and ruled upon the motion to dismiss. That the court relied upon the merits of Hazelwood's application in deciding to dismiss the cause is also obvious from a comparison of section 684(a)(1) through (3) with the findings of fact and conclusions of law it rendered.

The foregoing circumstances, coupled with the fact that Hazelwood insisted upon a jury trial during the hearing, compels us to hold that the trial court violated section 643. Because she had requested a jury trial and urged that right at the hearing, she was entitled to same. TEX. PROB.CODE ANN. § 643; *see Citizens State Bank v. Caney Inv.*, 746 S.W.2d 477, 478–79 (Tex. 1988) (holding that it is error to deny a jury trial once a litigant has properly requested same).

■ Green would have us hold, however, that section 692 of the Probate Code somehow trumped section 643 and permitted the trial court to dispense with a jury trial though same was properly requested. Green contends that section 692 directs the trial court to "dismiss" the cause "[i]f it is found" that the person has capacity to care for him or herself. In combining the phrase "if it is found" with the directive to dismiss, the legislature somehow imbued the trial court with the power to preliminarily determine capacity, according to Green.[3] The proposition is one of first impression. And, as interesting as the argument is, to so construe section 692 as authorizing the court to conduct a preliminary bench hearing to assess capacity would not only lead to an absurd result but also would nullify section 643.

For instance, one cannot reasonably deny that an ultimate fact in a proceeding such as that at bar involves the capacity of the proposed ward. Section 684(a)(1) of the Probate Code states as much. Furthermore, given the plain wording of section 643, an applicant for guardianship is entitled to have the jury address that fact, assuming its provisions are satisfied. So, if Green was correct in his reading of section 692, then the applicant would be obligated to prove to the trial court that the proposed ward was an incapacitated person in order to win the right to prove the same thing to a jury. In short, two trials would be required; one to a trial court in order to secure one to a jury. Yet, such an inefficient and wasteful result would be absurd and hardly that intended by the legislature. *See Cooper v. St. Paul Fire and Marine Ins. Co.*, 985 S.W.2d 614, 617 (Tex.App.—Amarillo 1999, no pet.) (holding that a statute cannot be construed in a manner that would lead to an absurd or unreasonable result).

Next, and again assuming the accuracy of Green's contention, if the applicant succeeded in proving the ultimate fact to the court and won the right to submit the same issue to a jury, then one can only wonder why submission to a jury would be needed to obtain a guardianship. This is so because, by applying the logic of Green

---

**3.** How one can logically go from one proposition to the other is unexplained by Green, however.

to section 693 of the Probate Code, the trial court could dispense with further proceedings and *sua sponte* appoint a guardian.[4] In other words, if section 692 grants to a trial judge the power to conduct a preliminary trial and dismiss the proceeding if the applicant fails to prove incapacity, then section 693 must surely permit the same court to appoint a guardian if incapacity is established in that same pretrial hearing. Given this result and its supposed validity, we again wonder why the legislature enacted section 643 if the trial court has the power to *sua sponte* grant final relief prior to a jury trial. But, because the legislature enacted section 643, the latter must be given meaning. *See Holt v. F.F. Enterprises,* 990 S.W.2d 756 (Tex.App.—Amarillo 1998, pet. denied) (holding that each provision of a statute must be afforded meaning when possible). We cannot ignore it. Rather, our duty is to construe it in a manner harmonious with sections 692 and 693. *See St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 511 (Tex.1997) (holding that the words and provisions of a statute must be construed in a harmonious way). Additionally, such a harmonious result is achieved if sections 692 and 693 are read as describing the authority of the trial court once capacity is resolved by the appropriate fact-finder. And, who the appropriate fact-finder is depends upon application of section 643. That is, if a jury is requested thereunder then the jury determines capacity. If a jury is not requested, then the trial court makes the determination. Indeed, such a construction comports with the plain reading of both sections 692 and 693 for both speak of action after a particular fact is or is not "found." Neither states who is to make the finding, merely what may or may not be done once the finding is made. And, in failing to so specify who is to make the finding, the legislature left open the availability of either a jury or a jurist.

■ In sum, Green's interpretation of section 692 is untenable and the trial court erred in relying upon same and denying Hazelwood a jury trial. Nonetheless, the error does not mandate reversal. And, because material questions of fact regarding Mrs. Norman's capacity existed, we must conclude that the error was harmful. *Mercedes–Benz Credit Corp. v. Rhyne,* 925 S.W.2d 664, 667 (Tex.1996).[5]

Accordingly, we reverse and remand the cause for further proceedings.

---

**4.** According to § 693, a court "may appoint a guardian of the individual's person or estate, or both" when *"it is found* that the proposed ward is totally without capacity as provided by this code to care for himself or herself and to manage the individual's property." Tex. Prob.Code Ann. § 693 (Vernon Supp.2001) (emphasis added). The italicized words are also used in § 692. So, it must be "found" that the proposed ward is or is not incapacitated before the court can exercise powers granted it under either § 692 or § 693.

**5.** In regards to Green's contention that Hazelwood was disqualified from serving as guardian, case law has implicitly determined that this is an issue proper for a jury to decide. Thus, Hazelwood was also entitled to a jury trial on this issue. *See Chapa v. Hernandez,* 587 S.W.2d 778, 781 (Tex.Civ.App.—Corpus Christi 1979, no writ); *see also Ulrickson v. Hawkins,* 696 S.W.2d 704 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.)