**Opinion filed March 29, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00311-CV

_____

## IN THE MATTER OF THE GUARDIANSHIP OF EVELYN VAVRA

**On Appeal from the 21st District Court**

**Burleson County, Texas**

**Trial Court Cause No. 26,086**

### O P I N I O N

An application was filed by appellants for the appointment of a guardian of the estate of Evelyn Vavra, the proposed ward. Appellants are the siblings and other relatives of Evelyn. An attorney for Evelyn filed a motion to dismiss the application. After a brief hearing, the trial court granted the motion to dismiss, citing Section 692 of the Texas Probate Code[1] as authority for its summary proceeding. The principal issue in this appeal is whether the trial court erred in summarily dismissing the application for guardianship of the estate instead of ruling on appellants' motions for a temporary injunction, an independent medical evaluation, and discovery.

We agree with the holding and reasoning in *In re Guardianship of Norman*, 61 S.W.3d 20 (Tex. App.—Amarillo 2001, pet. denied), which involved similar facts. In *Guardianship of*

---

[1]TEX. PROB. CODE ANN. § 692 (West 2003).

*Norman*, the court of appeals held that the applicant was entitled to a jury trial on the issue of the ward's competency. The record in this case reflects that no trial date had been set. Section 692 does not authorize a trial court to conduct a pretrial summary hearing to assess capacity or competency, thereby precluding a trial on the merits. Appellants are entitled to a jury trial or a bench trial on that issue. Accordingly, we reverse and remand for further proceedings.

## Background Facts

Because there has not been a trial on the merits, we will review the allegations in the application filed by appellants. Appellants include Melvin Schoeneman, brother of Evelyn; Janet Spears, Georgia Kovar, Clara Ruth Martin, and Barbara Charanza, sisters of Evelyn; James Vavra, a brother-in-law; and Shelia Okonski and Tina Gutierrez, nieces of Evelyn. They requested that Melvin Schoeneman be appointed guardian of the estate.

Appellants alleged that Evelyn has a mental disability that limits or prevents her employment and entitles her to disability benefits. According to appellants, Evelyn lacks the understanding and experience in legal and financial matters necessary to make sound decisions. In effect, appellants asserted that Evelyn did not possess the capacity to manage her property as would a reasonably prudent person. TEX. PROB. CODE ANN. § 601(14) (West Supp. 2011), § 692.

Evelyn was married for over thirty years to Jerry Vavra who died in May 2010. Jerry contracted pancreatic cancer early in 2010. A niece on Jerry's side of the family, Kathryn Nobles, began taking care of Jerry. Kathryn and her son, Michael Nobles, an attorney, advised Jerry to take the following steps for the care of Evelyn in the event Jerry died: (1) the transfer to Kathryn of the title to or the right to control the property owned by Jerry and Evelyn; (2) the adoption by Jerry and Evelyn of Kathryn, who is fifty-seven years old, as their daughter; and (3) the change of the beneficiary on Jerry's $100,000 life insurance policy from Evelyn to Kathryn.[2]

Jerry and Evelyn adopted their niece, Kathryn, as their daughter in April 2010. Shortly thereafter, Jerry signed a deed purporting to transfer three tracts of land to her. Jerry died in May. Immediately after Jerry's death, Kathryn claimed ownership or exclusive control over property that would otherwise belong to Evelyn. There was no trust or restriction on Kathryn to

---

[2]There are indications in the record that the "estate planning" was to qualify Evelyn for Medicaid to pay for nursing home care should Evelyn need such care. See Kathryn Nobles's Original Answer to Applicant's Application for Temporary Injunction. Evelyn was sixty years old at the time of trial.

2

hold the assets for Evelyn's benefit. Kathryn also claimed to have been granted a power of attorney from Evelyn.

In view of the adoption and death-bed transfers of assets, appellants requested that a temporary injunction be issued to prevent Kathryn from taking any action regarding the assets transferred to her or taking control of the life insurance proceeds. Appellants further requested that Evelyn be found to be an incapacitated person within the meaning the Texas Probate Code and that a guardian of the estate be appointed. Appellants also requested that the court appoint an attorney ad litem to represent the proposed ward in accord with the provisions of Section 646 of the Texas Probate Code.[3]

The proceedings initially were in the Burleson County Court. The county judge appointed an attorney ad litem, Bruce Erratt, to represent Evelyn. *See* Section 646. Although an attorney ad litem had been appointed, another attorney (William E. Conrad) appeared at a hearing on June 15, 2010, set by the county court to hear appellants' request for a temporary injunction. Without ruling on the request for a temporary injunction, the county court transferred the matter to the district court on June 18, 2010.

Although Erratt had been appointed attorney ad litem for Evelyn by the county court and Conrad had appeared at the injunction hearing purporting to represent Evelyn, a third attorney, Laura Upchurch, filed an appearance also claiming to represent Evelyn. Upchurch also filed a motion to dismiss the guardianship application on behalf of Evelyn. Evelyn's motion to dismiss the guardianship application asserted that she was not an incapacitated person, that she had been recently examined by her physician in June 2010 who did not find her to be incapacitated, that she had executed a statutory durable power of attorney and a medical power of attorney in favor of Kathryn that obviated the need for any guardianship even if she were incapacitated, and that a guardianship of her estate was unnecessary. Upchurch requested that the trial court set a hearing and, following presentation of evidence and arguments of counsel, dismiss the application for appointment of a guardian of the estate under Section 692.

Southern Farm Bureau Life Insurance filed an interpleader petition tendering the $100,000 proceeds of Jerry's life insurance policy to the court. That petition contained the original beneficiary designation of Evelyn and the change to Kathryn and her son Michael. The

---

[3]Section references are to sections of the Texas Probate Code.

petition also included Jerry's death certificate and Kathryn's application for the insurance proceeds five days after the death certificate was issued.

On September 10, 2010, the trial court conducted the hearing that is the subject of appellants' appeal. The matters set for the hearing included appellants' request for temporary injunction, appellants' request for examination of the proposed ward and discovery, and appellees' motion to dismiss the guardianship application. During the course of the hearing, appellants reminded the court of their pending request for a medical examination and further discovery. Because the ward was represented by Upchurch, the court discharged the attorney ad litem, Erratt.

The court next stated that the first matter would be the motion to dismiss the guardianship application. In support of the motion, Upchurch argued that (1) at a prior hearing on the temporary restraining order, appellants' attorney had admitted that, if Evelyn wanted to execute a power of attorney to appoint an agent other than Kathryn, Evelyn had the capacity to do so; therefore, it followed from that admission that Evelyn was competent; (2) Dr. Richardson, Evelyn's doctor, stated in a physician's certificate that Evelyn was capable of handling her finances; and (3) if the court wanted testimony, Evelyn would testify at the hearing to demonstrate her competence. Upchurch argued that, under Section 692, the court could find that Evelyn had the capacity to manage her property as a reasonably prudent person solely on the basis of the certificate from Evelyn's physician and the judicial admission that Evelyn was competent by appellants' attorney.

Appellants' attorney made substantially the same arguments that he makes on appeal: (1) Section 692 does not authorize a summary proceeding for the dismissal of an application for guardianship; (2) appellants had not obtained an order by the court on their discovery motion and were entitled to a medical examination of the ward and discovery; (3) there was no admission by appellants' attorney that Evelyn had the capacity to manage her affairs as a reasonably prudent person; and (4) the certificate from Dr. Richardson was not a substitute for an independent medical examination of Evelyn.

The court then allowed Evelyn to be a witness in support of the motion to dismiss. She testified that she was living with Kathryn and her husband, that her only income was from disability and social security payments, and that she and Jerry had agreed to adopt Kathryn. During cross-examination, Evelyn admitted that it was Michael Nobles who proposed the

4

adoption and that the adoption was kept secret from appellants. Evelyn could not explain any benefit to transferring the property to Kathryn rather than Evelyn using it to provide for her own care, nor was she able to state the value of the life insurance benefits that were changed to Kathryn. Evelyn testified that she had no desire to live in a nursing home and that Jerry wanted her to "be taken care of."

Upon objections by Upchurch during cross-examination, appellants were not allowed to ask Evelyn who gave her advice concerning the "estate planning," what the facts surrounding Jerry's life insurance were, whether Michael was the person helping her with estate planning, whether Michael represented her as an attorney, whether the adoption was part of the estate planning, why the adoption was kept secret from her family, and why she executed a power of attorney in favor of Kathryn. The court did allow Evelyn to answer the question of whether she understood that Kathryn was under no obligation to use for Evelyn's benefit any of the life insurance proceeds or the property transferred to Kathryn. Evelyn testified that she thought Kathryn was obligated to take care of her. She testified also that she "knew" that the effect of the adoption of Kathryn was that the property upon Jerry's death would go to her and her daughter Kathryn for her benefit.

After Evelyn's testimony, appellants requested the opportunity to call witnesses. The court responded, "On what issue?" and stated that it was "not going to try the case through the motion to dismiss. [Appellants could] call witnesses if it goes directly to the issue before the Court on the motion to dismiss." Appellants' attorney pointed out to the court that they had not been authorized to obtain a medical opinion or discovery; however, they wanted to call Melvin Schoeneman, Evelyn's brother, as a witness.

Melvin described Evelyn's difficulties in understanding certain matters, her inability to make sound decisions, and her tendency to be easily influenced by other people. Melvin testified that he learned about Kathryn's involvement with Jerry and Evelyn when he went to the hospital to see Jerry. He further testified that Evelyn's personality had changed about the time that Kathryn had become involved with them; she appeared to be no longer interested in her family. Melvin stated that it was after the death of Jerry that they learned of the change in the insurance beneficiary to Kathryn and the transfer of property to her. They met with Kathryn to discuss the matter, but Kathryn had refused to show them any documents.

Appellants objected again to the trial court even considering the motion to dismiss before they had an opportunity to conduct discovery and present their evidence. Based on Melvin's testimony, appellants argued that they had shown that Evelyn had limited capacity and was easily influenced and that they needed an opportunity to develop that record. The trial court granted the motion to dismiss their application for guardianship of the estate. Appellants filed a request for findings of fact and conclusions of law. Appellants also made a bill of exception on the matters they were not allowed to put in evidence. As a final matter at the hearing, the trial court awarded attorney's fees in the amount of $5,075 to Erratt with $2,000 to be paid by Evelyn and $3,075 to be paid by appellants.

*Issues on Appeal*

In four issues, appellants contend that (1) the trial court erred in holding that Section 692 authorizes summary dismissal of an application for guardianship of the estate; (2) even if the trial court had the authority to consider the motion to dismiss, there was factually and legally insufficient evidence to support the order; (3) the trial court erred in excluding nonexpert opinion evidence of the proposed ward's capacity; and (4) the trial court erred in the award of attorney's fees to the attorney ad litem and assessing judgment against appellants for a portion of those fees.

*Analysis*

Section 692 provides for the dismissal of an application for guardianship:

> If it is found that an adult person possesses the capacity to care for himself or herself and to manage the individual's property as would a reasonably prudent person, the court shall dismiss the application for guardianship.

Appellees, Kathryn and Evelyn, argue that counsel for appellants judicially admitted that Evelyn had the capacity "to manage [her] property as would a reasonably prudent person"; therefore, under Section 692, the trial court correctly dismissed the application. As support for this contention, appellees point to a statement by appellants' attorney at a hearing before the county court on appellants' request for an injunction against Kathryn. At that hearing, the court-appointed attorney ad litem had not appeared. Instead, another attorney, Conrad, had appeared on behalf of Evelyn. Appellees' attorney stated to the county court that he did not see how they could proceed if the attorney ad litem was not there because there might be a determination that

6

would void the statutory durable power of attorney that had been executed by Evelyn in favor of Kathryn. Counsel for appellants responded as follows:

> [W]e absolutely disagree that this affects Ms. Vavra. She can execute another power of attorney. They have to be alleging that she is no longer competent to even execute a new power of attorney. This [the injunction] only restricts or would restrict Kathryn Nobles. It would not restrict Evelyn from having any other person other than an agent of Kathryn Nobles exercise her power of attorney, if she chose to do so.

From the statement that Evelyn could execute another power of attorney, appellees argue that appellants' counsel was implying that Evelyn was then competent to execute another power of attorney and could choose someone other than Kathryn as her agent. Therefore, appellants had admitted that Evelyn had capacity to manage her property.

The statements by appellants' counsel do not meet the requirements for a judicial admission. A judicial admission must be a clear, deliberate, and unequivocal statement. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000); *House of Yahweh v. Johnson*, 289 S.W.3d 345, 352 (Tex. App.—Eastland 2009, no pet.). The statements by appellants' counsel did not meet those requirements. Further, it does not logically follow that Evelyn had the capacity to manage her property as a reasonably prudent person because she had the capacity to execute a power of attorney. The inference drawn by appellees would appear to be a logical fallacy of equivocation, i.e., the term "capacity" has a different meaning in different contexts.

Appellees refer to another statement by appellants' counsel as being a judicial admission that Evelyn was competent to manage her estate. Counsel stated, "Evelyn may be perfectly capable of taking care of herself left alone, but she needs protection from Kathryn Nobles." He then said that appellants were seeking oversight from the court so that the insurance benefits would be protected for Evelyn's benefit. Again, appellees read too much into the statement. Evelyn may have the capacity to take care of herself on a daily basis, but that does not mean that she has the capacity to manage her estate as a reasonably prudent person.

There was no judicial admission by appellants. We turn next to the statutory construction of Section 692. Statutory construction presents a question of law that we review de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006); *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002). The objective in construing a statute is to give effect to the legislature's intent, and courts must do so by looking to the words chosen by the legislature. *In re*

7

*Guardianship of Gibbs*, 253 S.W.3d 866, 871 (Tex. App.—Fort Worth 2008, pet. dism'd). The intent must be determined from the entire act and not from isolated portions. *In re Guardianship of Finley*, 220 S.W.3d 608, 614 (Tex. App.—Texarkana 2007, no pet.).

Appellees argue for the same interpretation of Section 692 that was rejected in *Guardianship of Norman*. The fact that Section 692 combines the phrase "if it is found" with the directive to dismiss does not somehow imbue the trial court with the power to preliminarily determine capacity. *Guardianship of Norman*, 61 S.W.3d at 23. The ultimate fact in the dismissal proceeding being reviewed by this court involved the capacity of the proposed ward. The summary proceeding below involved the ultimate question of capacity to manage the proposed ward's estate even though the trial court stated that it was not going to try the merits of the case.

Section 693 provides that, "[i]f it is found that the proposed ward is totally without capacity . . . to manage the individual's property, . . . the court may appoint a guardian of the individual's person or estate, or both." In *Guardianship of Norman*, the court reasoned that Sections 692 and 693 must be read in a harmonious way. When so read, it is clear that Sections 692 and 693 are not procedural statutes. They describe what the trial court should do once capacity or the lack thereof is resolved by the appropriate factfinder. *Guardianship of Norman*, 61 S.W.3d at 23–24.

Appellees argue that *Guardianship of Norman* does not control because the applicant for a guardianship in that case had requested a jury trial under Section 643. That is too narrow a construction of the reasoning and holding in *Guardianship of Norman*. The Amarillo court began its analysis by pointing out that to construe Section 692 as authorizing the trial court to conduct a preliminary bench hearing to assess capacity would lead to an absurd result. The court added, as a second reason, that that construction would also nullify Section 643, which provides that any party in a contested guardianship proceeding may request a jury trial.

It would be absurd to hold that an applicant is entitled to a jury trial on the merits if the applicant requested a jury, but that the applicant is not entitled to a trial on the merits if the applicant for a guardianship preferred a bench trial. Other sections in the same chapter of the Probate Code support our reading and that of the court in *Guardianship of Norman* of Section 692. For example, Section 649 provides that, in a guardianship proceeding, the rules relating to witnesses and evidence that govern in the district court apply as far as practicable.

8

In Section 875, the Texas Legislature expressly authorized a trial court to summarily dismiss an application for a temporary guardianship. Section 875 provides that a hearing shall be held no later than the tenth day after the date of the filing of the application and that, at the hearing, the respondent has the right to present evidence and confront and cross-examine witnesses. Section 875(f)(1). Section 875 provides, however, that "the court shall hear and determine the motion as expeditiously as the ends of justice require." Section 875(f)(5).

In contrast, neither Section 692 nor 693 provides for a summary procedure. They do not provide for any procedure, an indication that both statutes are to be read as non-procedural statutes that simply state the effect of a determination of capacity by a factfinder. The Probate Code contains strict procedural safeguards to ensure that the determination of capacity of a proposed ward meets the requirements of due process under the Fourteenth Amendment of the U.S. Constitution and due course of law under Article I, section 13 of the Texas Constitution. An applicant for a guardianship must prove by clear and convincing evidence, *inter alia*, that the proposed ward is "an incapacitated person." Section 684(a)(1). The provisions of the Probate Code protect the proposed ward's liberty and right to manage her own property. They also protect a ward if a guardianship is needed where the ward lacks the ability to take care of herself or to manage her property as would a reasonably prudent person.

The trial court below viewed the proceeding as a summary one. The court took up the request to dismiss the guardianship before hearing appellants' requests for a temporary injunction, an independent medical examination of the proposed ward, and further discovery. After Evelyn testified and appellants asked for an opportunity to present witnesses, the court wanted to know why they wished to call witnesses and stated that it was "not going to try the case through the motion to dismiss." During the cross-examination of Evelyn, the court precluded appellants from eliciting any testimony that might indicate that she was easily manipulated. Yet, the question of Evelyn's propensity to be manipulated is very relevant to whether she has the capacity to manage her estate as a reasonably prudent person. Also, the record, including Evelyn's testimony, clearly raises the issue of whether Evelyn should be examined by an independent physician who is qualified to opine on her ability to manage what would have been her estate.

There is an additional reason *Guardianship of Norman* is directly in point. The trial court's docket sheet in this case does not reflect that there had been a trial setting. A court may

9

set contested cases on written request of any party, or on the court's own motion, with reasonable notice of not less than forty-five days to the parties of the first setting for trial. TEX. R. CIV. P. 245. Appellants had not requested a jury, but a jury may be requested not less than thirty days in advance of trial. TEX. R. CIV. P. 216. Because we are remanding this case, any party to this contested proceeding may request a jury trial. Section 643. That is true for the proposed ward. Section 685.

Appellants' first issue is sustained. Section 692 did not authorize the trial court to determine capacity to manage the proposed ward's estate in a summary proceeding. Therefore, we need not discuss appellants' second and third issues. We turn to appellants' fourth issue.

In appellants' fourth issue, appellants argue that the trial court erred in awarding attorney's fees of $5,075 to Erratt, the appointed attorney ad litem, and in assessing judgment that Evelyn shall pay $2,000 of the amount and appellants shall pay $3,075 of the amount.

Texas adheres to the American Rule with respect to attorney's fees. Under that rule, litigants may recover attorney's fees only if specifically provided for by statute or contract. *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011). The Probate Code provides that the attorney ad litem shall interview the proposed ward and discuss with the proposed ward the law and facts of the case, the proposed ward's legal options regarding the disposition of the case, and the grounds on which guardianship is sought. Section 647. The record reflects that Erratt did not meet with the proposed ward because he learned that Upchurch had been retained to represent her.

Section 665A provides that the court shall order the payment of a fee set by the court as compensation to the attorney ad litem to be taxed as costs. Section 669 provides that, unless the application is denied based upon the recommendation of a court investigator, the costs "shall be paid out of the guardianship estate, or, if the estate is insufficient to pay for the cost of the proceeding, the cost of the proceeding shall be paid out of the county treasury." The trial court erred in ordering that the attorney ad litem fees be paid in part by appellants. *Overman v. Baker*, 26 S.W.3d 506, 512–13 (Tex. App.—Tyler 2000, no pet.). Appellants' fourth issue is sustained.

*This Court's Ruling*

The judgment of the trial court is reversed, and the cause is remanded for further proceedings.

TERRY McCALL

JUSTICE

March 29, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.