Martha Hill Jamison, Justice
Debbie Ratz, Gwen Patterson, and Wendy Bruney (the "Daughters"), are beneficiaries under the will of their mother, Mary E. Larson. In this appeal from probate proceedings, they challenge the trial court's orders approving the payment out of Mary's probate estate of certain expenses and attorney's fees. The expenses at issue were requested by appellee Robert Larson, as Independent Executor of the Estate of George N. Larson, Jr. (Mary's now-deceased husband) (we will refer to both Robert and George as the "Executor"). The attorney's fees were requested by two lawyers-appellees Catherine N. Wylie and William T. Powell (collectively, the "Lawyers")-who represented the Executor in a prior guardianship proceeding concerning Mary. Mary died about two months after the guardianship was established. George died during the pendency of this case.
Among their arguments on appeal, the Daughters contend that the Executor failed to timely contest the rejection of the expenses claim by Mary's probate administrator *370 and that the Probate Court lacked authority to order Mary's probate estate to pay the Lawyers' fees incurred in the earlier guardianship proceeding. Because the trial court erred in ordering payment of these expenses and fees from the probate estate, we reverse the trial court's orders and render a take nothing judgment on these claims.
Background
In 2013, Mary Larson was 86 years old, in deteriorating physical and cognitive health, and living with one of her daughters, Debbie Ratz.[1] Mary's husband, who also was elderly, was then physically unable to care for Mary.
On November 12, 2013, the Daughters filed an Application for Guardianship, identifying Mary as the proposed ward and seeking to have Ratz appointed as guardian. The application was assigned to Harris County Probate Court No. 3 (hereinafter, the "Guardianship Court"). The Executor filed an objection to the Daughters' application as well as a cross-application requesting to be named Mary's guardian or, in the alternative, for a neutral third party to be named guardian. The parties reached a mediated settlement agreement, which the Guardianship Court approved on October 14, 2014. Pursuant to the agreement, the parties filed an agreed order to appoint Howard Reiner as Mary's permanent guardian. The parties further agreed, among other things, that all marital property (with certain exceptions not relevant here) was community property and the parties' counsel were to "file their applications for attorney fees with the Court for auditing and approval without objection from the opposing counsel."[2] The parties also agreed to mutual releases of all claims between them related to the guardianship.
Mary died on December 11, 2014, while living in Galveston County,[3] and the Guardianship Court closed the guardianship estate on February 20, 2015.[4] Prior to closure, Reiner, Mary's attorney-ad-litem, and the Daughters' attorney submitted applications for fees that were approved by the Guardianship Court.[5] The Lawyers, who had represented George in the guardianship proceedings, did not file applications for fees with the Guardianship Court, and no fees were approved on their behalf.
Mary's will was submitted to probate in the Galveston County Probate Court (the "Probate Court"), which appointed Andrew Lewis as the dependent administrator.
*371 Reiner, Mary's attorney-ad-litem in the guardianship case, and the attorney representing the Daughters in the guardianship case submitted claims to Lewis. As mentioned, these claims previously had been approved by the Guardianship Court, and Lewis therefore approved payment of the claims from Mary's probate estate.[6] The Lawyers also submitted claims to Lewis, requesting payment of their fees, even though their fees had neither been submitted to nor approved by the Guardianship Court. An additional claim was submitted to Lewis on behalf of the Executor, requesting payment of other expenses, as will be explained below. Each of these claims indicates that it was filed pursuant to chapter 355 of the Texas Estates Code, which governs the Presentment and Payment of Claims made against probate estates. Tex. Est. Code §§ 355.001 -.203.
In the claim for Wylie's fees, she explains that she represented the Executor in the guardianship case and requested payment of $14,989.40 for legal fees and expenses out of Mary's probate estate. Powell's claim, seeking payment of $30,123.33 from Mary's probate estate, also states that it is for services rendered to the Executor in the guardianship case. Both of these claims are supported by billing statements from the respective attorneys.
In his claim, the Executor requests payment of $17,704.62 for "Attorney, Mediation, and Guardian's fees" that he states were "paid from George's personal estate on behalf of Mary ... while she was under Guardianship." The attached "detail" of the requested fees lists eleven separate items. Nine of the items are described as fees paid to an "Attorney for Mary's Children." All nine of these entries are for dates prior to the appointment of a temporary guardian for Mary and most were prior to the Daughters' filing their application for guardianship. The tenth entry states that it was for mediation fees (apparently the mediation that resulted in the settlement agreement in the guardianship proceedings), and the eleventh entry states that it was for guardian fees (apparently, given the dates listed, this was for temporary guardian fees). The Executor's claim was supported by cancelled checks, a receipt, and a bank account statement.
The three claims were submitted to Lewis as the administrator of Mary's probate estate. Although Lewis initially approved Wylie's claim for payment, he subsequently denied all three claims. None of the three claimants filed suit with the Probate Court to contest the administrator's decision, see Texas Estates Code section 355.064, but all three claims were subsequently brought to the Probate Court's attention for approval. During a hearing on the claims, Lewis and the Daughters urged that the claims could not be paid because (1) the Lawyers and the Executor failed to file suit timely to contest Lewis's decision and (2) the Lawyers and the Executor failed to submit their claims to and have them approved by the Guardianship Court. The probate judge, however, found the requests were requests for fees or reimbursement of expenses and not claims against the probate estate, and on that basis, the judge approved payment of the requests out of Mary's probate estate.
In the three orders that are the subject of this appeal, each entitled "Order Approving Request for Attorney's Fees," the Probate Court references its own Standards for Court Approval of Attorney Fee *372 Petitions,[7] which mandate that "fee requests should be filed as applications for payment of fees or for reimbursement and not as claims against the estate." The court then states that considering each request as an application for fees and expenses, such fees and expenses were necessary and should be paid by the estate. The court further noted that Lewis had paid the claims of Reiner, the attorney-ad-litem in the guardianship case, and the Daughters' attorney.[8]
Issues on Appeal
In three issues, the Daughters contend that the Probate Court erred in ordering the three claims paid because (1) the Lawyers and the Executor failed to timely file suit contesting the administrator's rejection of the claims as required by Estates Code section 355.064, (2) the Probate Court lacked authority to order Mary's probate estate to pay attorney's fees incurred in the earlier guardianship proceeding, and (3) the claims were not valid debts of the probate estate. We first will consider the Daughters' second issue as applied to the Lawyers' claims; then, we will consider the Daughters' first issue as applied to the Executor's claim. We address the claims in this manner because, as will become clear, the Lawyers' claims are fundamentally different than the Executor's claim. The Lawyers seek payment for services rendered to a different person in another proceeding. The Executor seeks reimbursement for funds that he contends he expended on Mary's behalf prior to the probate proceeding.
The Lawyers' Claims
As stated, the Daughters contend in their second issue that the Probate Court lacked authority to order Mary's probate estate to pay the Lawyers' fees in the guardianship proceeding. It is well established that Texas does not allow recovery of attorney's fees unless authorized by statute or contract. See, e.g., Gulf States Utils. Co. v. Low , 79 S.W.3d 561, 567 (Tex. 2002) ; In re Guardianship of Vavra , 365 S.W.3d 476, 484 (Tex. App.-Eastland 2012, no pet.). No one alleges that either Mary or her probate or guardianship estates had any contract requiring payment of the Lawyers' fees.
The claims were filed pursuant to Estates Code chapter 355, but this chapter simply allows claims to be presented for payment to a probate estate; it does not provide for payment of attorney's fees in the absence of a contract or statute authorizing them. See Tex. Est. Code §§ 355.001 -.203. The Probate Court treated the fee requests as requests for fees or reimbursement under the court's own standards, i.e., Galveston County Standards for Court Approval of Attorney Fee Petitions, but these standards are not statutory, do not purport to create a basis for awarding fees, and govern the payment of fees to attorneys representing personal representatives, not claims for payment of a third-party's attorney in a prior proceeding. See supra n.7.
During the hearing on the Lawyers' claims, the parties disputed whether the Probate Court could authorize the fees pursuant to Estates Code § 1155.054. We review matters of statutory construction de novo.
*373 Levinson Alcoser Assocs., L.P. v. El Pistolon II, Ltd. , 513 S.W.3d 487, 493 (Tex. 2017). In construing a statute, our objective is to determine and give effect to the legislature's intent. Nat'l Liab. & Fire Ins. Co. v. Allen , 15 S.W.3d 525, 527 (Tex. 2000). In doing so, we ascertain that intent from the language the legislature used in the statute, if possible, and do not look to extraneous sources for an intent the statute does not state. Id. If the meaning of the statutory language is unambiguous, we are to adopt the interpretation supported by the plain meaning of the provision's words. St. Luke's Episcopal Hosp. v. Agbor , 952 S.W.2d 503, 505 (Tex. 1997). Each word, phrase, and clause the legislature selected should be interpreted in a way that gives meaning to them all. PlainsCapital Bank v. Martin , 459 S.W.3d 550, 556 (Tex. 2015). Accordingly, we read statutes as a whole so as to render no part inconsistent, superfluous, or devoid of meaning. Id.
Section 1155.054 provides in relevant part as follows:
(a) A court that creates a guardianship ... on request of a person who filed an application to be appointed guardian of the proposed ward [or] an application for the appointment of another suitable person as guardian of the proposed ward ... may authorize the payment of reasonable and necessary attorney's fees, as determined by the court, in amounts the court considers equitable and just, to an attorney who represents the person who filed the application ... regardless of whether the person is appointed the ward's guardian ... from available funds of the ward's estate....
(c) The court may not authorize attorney's fees under this section unless the court finds that the applicant acted in good faith and for just cause in the filing and prosecution of the application.
It is undisputed that the Lawyers represented the Executor in the guardianship case and that the Executor filed an application seeking to be Mary's guardian or, in the alternative, to have a neutral third party named guardian.
The question here is whether section 1155.054 authorizes an award of fees by a court other than the court that created the guardianship. The Daughters argue that the intent of section 1155.054-as expressed by its plain language-is that only the court that created a guardianship can award attorney's fees to an applicant. The Lawyers argue to the contrary that in the absence of exclusivity language, specifically referencing the words "only" and "exclusively," section 1155.054 should not be interpreted as limiting the authority of courts to award fees to guardianship applicants. We agree with the Daughters.
We have considered the construction of this statute, or its substantially similar predecessor, in two recent cases, although neither settles the question raised here. In In re Guardianship of Whitt , we determined that the unambiguous language of the provision did not permit the trial court to authorize the payment of attorney's fees unless a guardianship was actually created. 407 S.W.3d 495, 499-500 (Tex. App.-Houston [14th Dist.] 2013, no pet.) (construing former Tex. Prob. Code § 665B, redesignated as Tex. Est. Code Ann. § 1155.054 ). In coming to this conclusion, we noted that the legislature could have, but did not, provide for the payment of attorney's fees from a "proposed" ward's estate. Id. In In Guardianship of Burley , we concluded that the unambiguous wording of the statute did not limit the recoverable attorney's fees to those incurred in the filing and prosecution of the application. 499 S.W.3d 196, 200 (Tex. App.-Houston [1st Dist.] 2016, pet. denied). In both cases, we found the statutory language to be clear and specifically noted the words the legislature used as well as language *374 and directives the legislature left out.
The provision has a very precise answer to the question presented here: the "court that creates [the] guardianship ... may authorize the payment." Contrary to the Lawyers' contention, no additional words of exclusivity are necessary. The Lawyers cite no language in the provision, and we discern none, suggesting an intent to permit any other court to authorize payment of fees except the court that created the guardianship. This limitation makes sense because the court that creates a guardianship is in the best position to make the determinations required under section 1155.054, including whether an applicant acted in good faith and with just cause in the filing and prosecution of the application and what amount would be equitable and just for such fees. Cf. Russell v. Moeling , 526 S.W.2d 533, 536 (Tex. 1975) (explaining, in will probate context, that questions of good faith and just cause are best determined by the court in which the proceedings at issue occurred).
We acknowledge that the present case is somewhat unusual, as Mary died within months of the guardianship's creation. However, these circumstances do not alter the language of the statute. The Estates Code provides specific guidance for the circumstance of a ward's death. See Tex. Est. Code §§ 1204.001 -.202. See generally Valdez v. Robertson , No. 14-10-00323-CV, 2011 WL 2566277, at *3-4 (Tex. App.-Houston [14th Dist.] June 30, 2011, no pet.) (discussing the question of a guardianship court's continuing jurisdiction upon the death of a ward). We note that the Daughters' attorney, the guardian, and the attorney-ad-litem in the guardianship proceeding were able to present their fee requests and have them authorized by the Guardianship Court before the guardianship estate was closed.[9]
In the Probate Court and their briefing to this court, the Lawyers complain that appellants breached the settlement agreement in which the parties agreed not to object to each other's attorney's fees requests.[10] The Lawyers, however, have not pleaded or otherwise raised a breach of contract claim in this case, and none was tried by consent. Moreover, the Lawyers do not explain how the parties' agreement to not object could confer authority on the Probate Court to award fees it otherwise could not award.
The Lawyers further argue that the Probate Court could properly authorize the payment of their fees because the Estates Code grants the court exclusive jurisdiction over probate proceedings, as well as pendant and ancillary jurisdiction as necessary for judicial efficiency. See Tex. Est. Code §§ 31.001 -.002, 32.001-.002; see also Lee v. Lee , 528 S.W.3d 201, 212 (Tex. App.-Houston [14th Dist.] 2017, pet. filed) (discussing jurisdiction of statutory probate courts). However, nothing in these sections authorizes a probate court in a subsequent probate proceeding to award fees to the attorneys of a different party in *375 a previously concluded guardianship proceeding from a different court.
The Probate Court lacked authority to authorize payment from Mary's probate estate to the Lawyers for services they rendered to the Executor in the guardianship proceeding. Accordingly, the Probate Court erred in ordering such payment. We sustain the Daughters' second issue to the extent that it challenges the orders requiring payment of the Lawyers' fees from Mary's probate estate.
The Executor's Claim
In their first issue, the Daughters contend, among other things, that the Probate Court erred in ordering the Executor's claim paid from Mary's probate estate because the Executor failed to timely file suit contesting administrator Lewis's rejection of his claim as required by Estates Code section 355.064. We agree.
When a person seeks payment on a claim for money against an estate, such as the Executor's claim in the present case, the Estates Code sets out the procedure to follow. Under section 355.065, the claimant must first present the claim to the representative of the estate. Tex. Est. Code § 355.065 ; see also In re Estate of Gaines , 262 S.W.3d 50, 61-62 (Tex. App.-Houston [14th Dist.] 2008, no pet.) (discussing steps under predecessor code); Walton v. First Nat'l Bank of Trenton, Trenton, Tex. , 956 S.W.2d 647, 651 & n.1 (Tex. App.-Texarkana 1997, pet. denied) (discussing definition of "claims for money" under predecessor code). The representative has 30 days after the claim is presented to accept or reject it. Tex. Est. Code § 355.051. If the representative fails to timely accept or reject the claim, the claim is considered rejected. Id. § 355.052. When a claim is rejected, the claimant must file suit in the court of original probate jurisdiction within ninety days of the rejection, or the claim is barred. Id. § 355.064.[11] To file suit on a claim, the claimant must file a pleading alleging the presentation and rejection of the claim and demonstrate that the suit was filed within 90 days of rejection. Gaines , 262 S.W.3d at 62 n.12 (citing Jaye v. Wheat , 130 S.W.2d 1081, 1084 (Tex. Civ. App.-Eastland 1939, no writ) ).
It is undisputed that the Executor filed his claim for money with Lewis and Lewis expressly denied the claim. The Executor did not file suit in the Probate Court contesting the rejection within 90 days.[12] He asserts, however, that the Probate Court's consideration of his request as an application for payment of fees or for reimbursement, and not as a claim against the estate, rendered section 355.064 inapplicable to the request.
As discussed above, the Executor requested payment of "Attorney, Mediation, and Guardian's fees" that he paid "on behalf of Mary ... while she was under Guardianship."[13] The detailed list of the *376 requested fees attached to the claim shows that nine of the eleven items dated from before the appointment of Reiner as Mary's temporary guardian and the remaining two occurred before Reiner's appointment as permanent guardian. Accordingly, these expenses were clearly not incurred during the pendency of the probate proceedings and, in fact, predate even the creation of the permanent guardianship.[14]
The Executor failed to file suit contesting Lewis's rejection of his claim for money within 90 days of such rejection; accordingly, his claim was barred by operation of section 355.064. See Gaines , 262 S.W.3d at 62. We therefore sustain the Daughters' first issue to the extent it challenges the Probate Court's order requiring payment of the Executor's claim from Mary's probate estate.[15]
Conclusion
We reverse the Probate Court's three orders approving payment by Mary's probate estate of the Lawyers' and the Executor's claims and render judgment that these parties take nothing on these claims.

Mary and George were married for over twenty years and did not have any children together, but both had children from prior marriages.

This provision specifically listed "The Wylie Law Firm" but did not list appellee William T. Powell or his law firm.

At that time, George and Mary were apparently living in the same assisted care facility, although not together due to the level of care Mary required.

A guardianship of the estate of a ward must be settled when the ward dies. See Tex. Est. Code § 1204.001.

Costs and expenses in a guardianship are governed by chapter 1155 of the Estates Code. Tex. Est. Code §§ 1155.001 -.202. Subchapter A generally covers compensation for guardians, although a guardian may be entitled to additional expenses under other provisions. See id. §§ 1155.001 -.008. Compensation for attorneys-ad-litem is governed by section 1155.151. The attorney representing appellants sought fees pursuant to section 1155.054, entitled "Payment of Attorney's Fees to Certain Attorneys," which permits the court creating the guardianship to authorize the payment of reasonable and necessary attorney's fees to an attorney who represents a party who files an application to be appointed guardian if the applicant acted in good faith and for just cause in filing and prosecuting the application. Id. § 1155.054.

The Daughters assert that the Guardianship Court audited and reduced these claims but do not cite any evidence to support this assertion, and we do not have the record from the guardianship case before us.

www.galvestoncountytx.gov/ja/pb/Documents/Probate% 20Information/Standards% 20for% 20Court% 20Atty% 20Fees% 20-% 20Galveston% 202014.pdf (last visited November 8, 2017).

In the Wylie order, the Probate Court added that refusing payment to Wylie was "in direct conflict" with paying the other attorneys.

As mentioned above, in its order approving payment of Wylie's claim, the Probate Court stated that administrator Lewis's denial of that claim was "in direct conflict" with his approval of the claims by the Daughters' attorney, the guardian, and the attorney-ad-litem. However, the clear distinction between the two sets of claims is that the claims by the Daughters' attorney, the guardian, and the attorney-ad-litem were authorized by the Guardianship Court, whereas the Lawyers' claims were not. The Estates Code provides a mechanism for the relief the Lawyers seek, but that mechanism was not utilized.

As noted above, see supra n.2, this provision of the agreement expressly referenced Wylie but not Powell.

Section 355.064(a) specifically provides that: "[a] claim or part of a claim that has been rejected by the personal representative is barred unless not later than the 90th day after the date of rejection the claimant commences suit on the claim in the court of original probate jurisdiction in which the estate is pending."

The record does not contain any pleading by the Executor contesting the rejection, and the Executor does not argue on appeal that he filed any such pleading even in light of the Daughters' statement that he did not. Lewis rejected the claim on December 29, 2015. The Executor's claim was discussed at a hearing on July 5, 2016, over six months later. At the hearing, Lewis urged the Probate Court to reject the claim due to the Executor's failure to comply with section 355.064.

The settlement agreement states that all property owned by George and Mary was community property, except for a couple of items that were to be categorized by the guardian. A guardianship estate consists of the ward's property. See Tex. Est. Code § 1002.010.

The Executor offers no explanation for why the Probate Court treated his request as an application for the payment of fees or for reimbursement in the probate proceedings. The Executor references the Probate Court's own Standards for Court Approval of Attorney Fee Petitions, but nothing in these standards suggest that they apply to claims such as the Executor's that predate the probate proceedings. See supra n.7.

We need not address the Daughters' third issue or their remaining arguments under issues one and two.