**Affirmed in Part, Reversed in Part and Remanded; Memorandum Opinion filed June 18, 2026.**



In The

# Fifteenth Court of Appeals

---

## NO. 15-25-00017-CV

---

## IN THE GUARDIANSHIP OF LANDEN THOMAS GRISWOLD,

### an Incapacitated Person

---

**On Appeal from the County Court at Law
Cherokee County, Texas
Trial Court Cause No. G00074**

---

### MEMORANDUM OPINION

The case underlying this appeal is a guardianship proceeding relating to Landen Thomas Griswold, an adult with severe disabilities. Griswold's biological mother, Candice Jeffcoat—whose parental rights to Griswold were terminated years before, applied to serve as his permanent guardian, and the Texas Health and Human Services Commission (HHSC) sought to intervene in the proceedings. At the hearing on HHSC's motion for leave to intervene, the trial court not only granted HHSC's intervention but also decided the merits of Jeffcoat's guardianship

application, denying it and appointing HHSC as Griswold's permanent guardian.

We affirm the trial court's order granting HHSC's intervention, but we reverse the trial court's order on the merits of the underlying guardianship proceeding because Jeffcoat had no notice that the hearing on HHSC's motion for leave to intervene would also serve as a final hearing on the merits of her application as well as HHSC's competing application, violating her due process rights. We remand to the trial court for further proceedings.

## BACKGROUND

Griswold is a severely autistic adult. There is no dispute that Griswold cannot take care of himself and needs a permanent guardian. Jeffcoat is Griswold's biological mother, but her parental rights were terminated in 2012. The Texas Department of Family and Protective Services filed the suit that resulted in the termination of Jeffcoat's parental rights due, in part, to her impending prison sentence for possession of a controlled substance. In the trial court's order of termination, the Department was appointed as managing conservator; Griswold, then seven years old, was placed in foster care.

Shortly after Griswold turned 18, Jeffcoat filed an application for appointment as his permanent guardian. The trial court appointed an Attorney Ad Litem for Griswold but refused Jeffcoat's requests for appointment of a guardian ad litem and a court investigator to serve as neutrals to evaluate Jeffcoat's guardianship application. HHSC then filed its application for appointment of a permanent guardian and, separately, its petition in intervention and motion for leave, requesting to intervene in the proceedings and to be appointed as Griswold's permanent guardian.

The trial court set a hearing on HHSC's motion for leave to intervene. At the hearing, the trial court heard testimony from two HHSC witnesses (an HHSC

2

guardianship specialist and a caseworker) and Jeffcoat. In her testimony, Jeffcoat explained that she voluntarily relinquished her rights in response to the Department's termination suit because she "was going to prison, and there was nobody else [to take care of Griswold]." She further testified that she served 11 months in prison, was released in 2013, and has not used a controlled substance since before going to prison. According to Jeffcoat, since her release from prison, she has helped others with drug addictions, working with the police department in Palestine, Texas, and starting a rehabilitation center there.

The trial court granted HHSC's intervention, found Jeffcoat unsuitable to serve as guardian, and denied Jeffcoat's guardianship application on the merits. It also appointed HHSC permanent guardian of Griswold and issued findings of fact and conclusions of law. There was no notice or trial setting informing Jeffcoat that the trial court would consider the merits of her application at the hearing. Jeffcoat moved for new trial, which the trial court denied. This appeal followed.

## ANALYSIS

There are two primary issues in this appeal. First, Jeffcoat challenges the trial court's order granting HHSC's motion for leave to intervene in the guardianship proceeding that she filed. Second, Jeffcoat complains that she did not receive adequate notice that the trial court would also rule—based solely on the hearing on HHSC's motion for leave to intervene—on the merits of her guardianship application and on HHSC's competing application at the hearing on HHSC's motion for leave. Because our decision on these two issues disposes of all others raised by Jeffcoat, we address only these issues. We begin with the issue of HHSC's intervention.

*HHSC's Intervention*

Many of the arguments in this appeal, as well as the flawed procedure ultimately employed in the trial court, come, at least in part, as a result of a fundamental misunderstanding of the procedural requirements for the guardianship proceedings brought by Jeffcoat and HHSC.

Under Texas law, HHSC must file an application for guardianship of a minor referred to HHSC by the Department if HHSC determines that the minor, because of a physical or mental condition, will be incapacitated when they become an adult and that there are no less restrictive alternatives to guardianship available. Tex. Hum. Res. Code § 161.101(a); *see id.* § 48.209(a)(1) (requiring Department of Family and Protective Services to refer minor for guardianship services if minor is at least 16 years of age and Department has reason to believe minor will be incapacitated when they become adult). There is an exception, however, to the requirement that HHSC file a guardianship application—if HHSC "becomes aware of a guardianship program, private professional guardian, or other person willing and able" to provide the guardianship services that HHSC would otherwise provide. *Id.* § 161.102(a). In that situation, HHSC shall refer the incapacitated individual to the alternate person or program for guardianship services. *Id.*

In this case, there is no dispute that the Department referred Griswold to HHSC for guardianship, that Griswold is incapacitated, and that no less restrictive alternative to guardianship is available. Therefore, according to HHSC, because it determined Jeffcoat was unable to serve as guardian due to the prior termination of her parental rights, it was compelled to seek guardianship under Section 161.102, and because Jeffcoat had filed her application first, HHSC was left with having to seek intervention in that pending proceeding. In contrast, Jeffcoat argues that Section 161.102 required HHSC to refer Griswold's guardianship to her and

4

prevented HHSC from intervening. In other words, under Jeffcoat's understanding, HHSC was precluded from intervening in the proceeding if the trial court found that she was a "suitable" guardian for Griswold.

Jeffcoat's argument is based on a misunderstanding of the import of Sections 161.101 and 161.102. These sections provide HHSC—not the trial court—with the obligation to make a pre-litigation determination. That is, HHSC must decide whether it is required to file an application for guardianship upon receipt of a referral from the Department, s*ee id.* § 161.101(a), or whether, instead, it must refer the minor to another qualified person or organization for guardianship, *see id.* § 161.102(a). Thus, while these sections govern the issue of whether HHSC was *required* under Section 161.101 to file an application for guardianship, they have no impact on the issue of whether HHSC *may* properly intervene in a pending guardianship proceeding, like the one Jeffcoat commenced. Consequently, whether HHSC could properly intervene is independent of the issue of Jeffcoat's ability or suitability to serve as Griswold's guardian—or at least, it should have been.

When HHSC sought to intervene, the question before the trial court was defined by statute and had nothing to do with Jeffcoat's suitability to serve as guardian. Under the Estates Code, an interested person may intervene in a guardianship proceeding by filing a timely motion to intervene. Tex. Est. Code § 1055.003(a); *see id.* § 1002.018(2) (defining "interested person" as "a person interested in the welfare of an incapacitated person"). A trial court has discretion to grant or deny a motion to intervene in a guardianship proceeding, and there are only two factors it "must" consider—whether:

> (1) the intervention will unduly delay or prejudice the
>     adjudication of the original parties' rights; or

5

(2) the proposed intervenor has such an adverse relationship with the ward or proposed ward that the intervention would unduly prejudice the adjudication of the original parties' rights.

*Id.* § 1055.003(c)(1)-(2).

The trial court held a hearing and heard testimony from HHSC's witnesses, as well as testimony from Jeffcoat. Based on the evidence before it, the trial court was within its discretion to grant HHSC's motion to intervene in Jeffcoat's guardianship proceeding given HHSC's role in providing services to disabled persons like Griswold and upon hearing that Jeffcoat's parental rights to Griswold previously had been terminated. The trial court had no reason to believe based on the evidence presented that HHSC's presence would unduly prejudice or delay the adjudication or that HHSC had an adverse relationship with Griswold.

We therefore affirm the trial court's order granting HHSC's motion for leave to intervene. This conclusion does not end our inquiry, however, because the trial court did not just grant HHSC's intervention after the hearing on HHSC's motion for leave to intervene. It also decided the merits of Jeffcoat's and HHSC's competing guardianship applications.

### *Lack of Notice*

Following the hearing on HHSC's motion for leave to intervene, the trial court found that Jeffcoat was unsuitable to serve as guardian, denied her application for guardianship, and appointed HHSC as Griswold's permanent guardian. As a result, the trial court decided the merits of Jeffcoat's application for guardianship at a

6

hearing set solely on HHSC's motion for leave to intervene, without providing any notice to the parties that it would do so.

On appeal, HHSC argues that Jeffcoat was not entitled to notice or, alternatively, that she tried the issue of suitability by consent or waived any objection to lack of notice. It notes that the Estates Code contains provisions that do not require notice in a guardianship proceeding, citing Section 1051.001(a) and (b). *See* Tex. Est. Code § 1051.001. That Section, however, entitled "Issuance of Notice or Process in General," pertains only to what persons are required to receive notice of a guardianship proceeding and, as a result, of hearings during those proceedings. Section 1051.001 certainly does not stand for the proposition that a party who files an original guardianship proceeding, like Jeffcoat, is then not entitled to notice of a trial in the very proceeding she filed.

In fact, the Estates Code provides for the right to a jury trial, stating that "[a] party in a contested guardianship proceeding is entitled to a jury trial on request." *Id.* § 1055.052. This provision and its predecessors have led Texas courts to conclude that guardianship proceedings cannot be summarily disposed of without 45 days' notice of trial under Rule 245 of the Texas Rules of Civil Procedure. *See, e.g.*, *In re Guardianship of Vavra*, 365 S.W.3d 476, 484 (Tex. App.—Eastland 2012, no pet.) (concluding that trial court erred in dismissing guardianship without providing parties notice and trial); *In re Guardianship of Norman*, 61 S.W.3d 20, 23 (Tex. App.—Amarillo 2001, pet. denied) (concluding that trial court erred in dismissing guardianship proceeding without jury trial on disputed issues); *see also* Tex. R. Civ. P. 245 (providing that court "may set contested cases . . . with reasonable notice of not less than forty-five days to the parties of a first setting for trial"). This timing requirement makes sense. Because a party to a contested guardianship proceeding is entitled to a jury trial, it must request one at least 30 days before trial

and therefore must have adequate notice of a trial setting. *See* Tex. R. Civ. P. 216(a) (requiring written request for jury to be filed "a reasonable time before the date set for trial[,] but not less than thirty days in advance"); *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996).

At the intervention hearing and again at the hearing on Jeffcoat's motion for rehearing, the trial court suggested that by taking the stand and putting her suitability at issue during the hearing on HHSC's motion for leave to intervene, Jeffcoat had put that issue before the court to decide on the merits. HHSC likewise urges in this appeal that Jeffcoat tried the issue of suitability by consent or waived her objection and should not now be heard to complain about a lack of notice or due process concerns. Neither the trial court nor HHSC is correct.

For an issue to be tried by consent, there must be *a trial*. To be sure, both sides presented evidence at the hearing on HHSC's motion for leave to intervene, and Jeffcoat did raise her suitability as a defense to HHSC's intervention, but it is apparent from the record that neither party thought it was trying the ultimate merits of Jeffcoat's application for guardianship *vis a vis* HHSC's request to be appointed guardian *if HHSC was allowed to intervene*.[1] As the Texas Supreme Court has recognized, an issue is not tried by consent "merely by hearing testimony thereon." *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 446 (Tex. 1993) (quoting *Harkey v. Texas Employers' Ins. Ass'n*, 208 S.W.2d 919, 922 (Tex. 1948)). An

---

[1] For example, at the hearing, Jeffcoat (who appeared pro se) informed the court that she intended to call witnesses at a later time to testify as to her suitability. These witnesses, including the police officers who arrested her prior to her parental rights termination and the district attorney who prosecuted her, would testify about how she has changed her life. Similarly, for its part, HHSC noted for the trial court that "the main issue today is really just the intervention, and that's what we would like to do is just keep this to the intervention." And HHSC counsel later reiterated that "[w]e are trying to intervene here, and then after that we can set this for the actual guardianship hearing, your Honor, if we're allowed in."

8

appellate court "must examine the record not for evidence of the issue, but rather for evidence of *trial* of the issue." *Bos v. Smith*, 556 S.W.3d 293, 307 (Tex. 2018) (emphasis in original). Jeffcoat did not try the merits of the ultimate issue of whether she is suitable to serve as Griswold's guardian; rather, she raised the issue of her suitability as a defense, albeit mistakenly, to HHSC's intervention and informed the court that she intended to call additional witnesses before its ultimate ruling on this issue at trial.

Because Jeffcoat was entitled to 45 days' notice of a hearing on the merits of her guardianship application, in part so that she could decide whether to exercise her right to request a jury trial, the trial court violated her due process rights by ruling on the merits of her application without sufficient notice. *See Wade v. Valdetaro*, 696 S.W.3d 673, 676–77 (Tex. 2024) (per curiam) (holding due process rights violated when notice of trial setting sent to wrong address and rejecting idea that party waived such rights by participating in final hearing and failing to move for continuance); *In re K.M.L.*, 443 S.W.3d 101, 118–19 (Tex. 2014) (noting that failure to give father 45 days' notice of merits hearing violated his right to due process).

## CONCLUSION

We affirm the trial court's order granting HHSC's motion for leave to intervene. We reverse the Order Appointing Permanent Guardian of the Person with Full Authority and the Order Denying Application for Guardianship Due to Unsuitability, signed on August 1, 2024. We reinstate Jeffcoat's application for permanent guardianship and remand to the trial court for further proceedings consistent with this opinion.

9

/s/ Scott K. Field
Scott K. Field
Justice

Before Chief Justice Brister and Justices Field and Farris.